UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ELIZABETH T.,[1]

       Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

       Defendant.

Case No. 6:20-CV-00060-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Elizabeth T. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

    Plaintiff protectively filed for DIB on December 15, 2015, alleging disability beginning on May 24, 2015. Tr. 205. Plaintiff's application was initially denied on May 25, 2016, Tr. 109, and upon reconsideration on September 2, 2016. Tr. 115. Plaintiff requested a hearing before an

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

Administrative Law Judge ("ALJ"), which ultimately took place on December 18, 2018. At that hearing, plaintiff and a vocational expert testified. The ALJ issued a decision on January 18, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 13.

The Appeals Council denied plaintiff's request for review on November 13, 2019. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since May 24, 2015, the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: multiple sclerosis (MS), diabetes mellitus, type II, asthma, and hypertension (20 CFR 404.1520(c)). *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff could perform sedentary work as defined in 20 § CFR 404.1567(a), in that she could stand or walk two hours total in an eight-hour day, and lift no more than 10 pounds, except that she could only occasionally balance, crawl, or stoop, and never climb ladders ropes, or scaffolds, she could only frequently handle and finger, and she should have no exposure to extreme heat or cold. Tr. 17.

At step four, the ALJ found plaintiff was not capable of performing past relevant work. Tr. 23. However, at step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, specifically document preparer, polisher of eye glass frames, and stuffer. Tr. 23-24. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discounting her subjective symptom testimony and the medical opinion of her treating physician.

**I.     Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." The decision under review is dated January 18, 2019. Tr. 657. Therefore, SSR 16-3p applies.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 23. However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

5 – OPINION AND ORDER

More specifically, the ALJ found "the actual effects of [plaintiff's] disorders has not been so substantial that she could not perform work with minimal exertional demands on a regular full time basis." Tr. 18. The ALJ noted that "[d]espite multiple sclerosis, [plaintiff] has continued to perform significant work as a self-employed dog groomer," *id.*, which is a medium exertion job. Tr. 19. The ALJ observed that the "physical requirements" of the work that plaintiff "performed are significant," Tr. 18, and plaintiff "repeatedly described her work as physically demanding." Tr. 19. The ALJ cited to plaintiff's statements that she did "a lot of physical work grooming large dogs" and it was "quite physical." *Id.* The ALJ also noted that plaintiff did a "lot of bending, reaching, pulling, or lifting at work," "lifted 'a lot' of short heavy dogs onto the table for grooming," *id.* (citing Tr. 756), had to "do a lot of lifting and bending" and "spend a great deal of time on the feet" even though she "hired assistance." *Id.* The ALJ concluded that, "[e]ven should the claimant have reduced her hours to three days a week, hired assistance, and otherwise reduced her workload, she nonetheless has been capable of sustaining significant amounts of time and effort in a position that greatly exceeds her residual functional capacity," i.e., sedentary work. *Id.* In support, the ALJ cited a chart note that said plaintiff "was able to take a couple days off during which her pain was better but when she returned to work her pain increased again back to the same intensity prior to taking a few days off." *Id.*; Tr. 668.

Holding oneself out for part-time work is not inconsistent with the receipt of social security benefits, which only requires the inability to work full-time. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Nor should claimants "be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (recognizing a claimant "does not need to be 'utterly incapacitated' in order to be disabled"). However, "[a]n

ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Moreover, in evaluating a claimant's testimony, the ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Thus, here, the ALJ properly considered the fact that plaintiff regularly engaged in physically demanding work, and that her symptoms subsided when she was not engaged in such work, for purposes of assessing the extent of her claimed limitations. This was a specific, clear and convincing reason, supported by substantial evidence, to discount her testimony.

The ALJ also pointed to a discrepancy in plaintiff's December 18, 2018 testimony where she said she worked three days a week, i.e., 20-25 hours a week, with a May 2, 2018 chart note where she said she was "working four 10s" and her husband's December 5, 2018 statement that she had "reduced her work days from 5 to 4, yet these days are still 8-10 hours," i.e., 32 to 40 hours a week. Tr. 18 (citing Tr. 336, 848). Again, in evaluating a claimant's testimony, the ALJ may consider inconsistencies between the claimant's testimony and her conduct. *Molina*, 674 F.3d at 1112. This was yet another specific, clear and convincing reason, supported by substantial evidence, to discount plaintiff's testimony.

Plaintiff contends the ALJ erred by failing to address her testimony that, although she worked long days, she needed to rest frequently and took many breaks. Pl. Br. 18. While the ALJ did not specifically repeat plaintiff's testimony in that regard, the ALJ did address this testimony by observing that "[w]ith a restriction in sedentary work, [plaintiff] would only be expected to stand or walk two hours a day" and "[h]er ability to perform work to the extent that she does admit . . . is consistent with an ability to perform the much lesser demands of sedentary

work on a regular full time basis." Tr. 19. This was a proper basis upon which to discount plaintiff's testimony, for the reasons discussed above.

In addition to the aforementioned factors, the ALJ also discounted plaintiff's testimony because it conflicted with the objective medical evidence. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements"). The ALJ noted that plaintiff's disorder "is not progressing," observing, among other things, that her "most recent brain MRI from April 23, 2018, was stable compared to prior imaging, with no enhancing lesions." Tr. 19 (citing Tr. 829). Plaintiff argues the ALJ erred by relying on the fact that she was not taking her Amantadine dose in the afternoon when in fact there is evidence this medication was only slightly helpful. Pl. Br. 20. Even if this was error, it is harmless as the ALJ provided other specific, clear and convincing reasons to reject plaintiff's testimony.

Finally, plaintiff argues the ALJ failed to comply with *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), by merely "paraphrasing" her testimony and failing to identify which testimony she found not credible and never explaining which evidence contradicted that testimony. Pl. Br. 18 (citing *id.*, 806 F.3d at 494). In *Brown-Hunter*, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Id*. at 494. The Ninth Circuit held that "[t]his is not the sort of explanation or

the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Id.*

Here, the ALJ recapped plaintiff's testimony regarding her fatigue and physical limitations. Tr. 18. Then, as described above, ALJ went into great detail explaining why plaintiff's testimony was inconsistent with statements she had made and other evidence in the record. There is no error based on *Brown-Hunter* here.

## II.     Medical Opinion Testimony

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.[2] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id*. (treating physician) (quoting *Reddick*, 157 F.3d at 725); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725); *Widmark*, 454 F.3d at 1066.

---

[2] Under the new regulations, effective for claims filed on or after March 27, 2016, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). However, these regulations do not apply to this case because plaintiff filed his application for benefits in 2015.

9 – OPINION AND ORDER

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### A.   Dr. David Clark, D.O.

Dr. Clark completed a Treating Source Statement on December 3, 2018. Tr. 858. He had been treating plaintiff since August 11, 2015, saw her every two to six months, and diagnosed her with MS. *Id.* Dr. Clark indicated that plaintiff would have to lie down for 10 minutes every hour, Tr. 859, and that, due to fatigue, plaintiff would have to take three to four unscheduled 15-minute breaks during an eight-hour workday. Tr. 860. Dr. Clark opined that due to weakness and fatigue, plaintiff would miss work more than four days per month. Tr. 862. Dr. Clark also opined that plaintiff was likely to be "off task," i.e., her symptoms would be severe enough to interfere with her attention and concentration, 20% of a typical workday, Tr. 861. Finally, Dr. Clark indicated that for 15% of a workday, plaintiff would be limited in grasping, turning, and twisting objects with her hands, fine manipulation with her fingers, and reaching with her arms, and she would need 10 minutes after using her hands to perform handling or fingering. Tr. 861.

Dr. Clark's opinion was contradicted. *See* Tr. 88-108. Therefore, the court considers whether the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to reject it.

The ALJ gave partial weight to Dr. Clark's opinion that plaintiff "not only must sit for six hours a day and stand or walk for only two hours, but would need to lie down 10 minutes every hour, and would be absent four days a month." Tr. 22. The ALJ found that, "given [plaintiff's] admitted amount of work activity, including at least eight-hour days, it is not plausible that she would in fact need to lie down every hour." *Id.* The ALJ further observed that "[w]ith a limitation to sedentary exertion and resulting decrease in fatigue, her need to recline would be even less." *Id.* The ALJ found: "There is no indication that the claimant would need to spend significant amounts of time reclining. Her ability to work 10 hour days at times, or manage 'long days,' together with what other activity she performs, is not consistent with such a limitation." Tr. 21.

The ALJ concluded that Dr. Clark's opinion that plaintiff would have to miss four days a month was "speculative, and at most is based on the assumption that her work would continue to be the exertionally demanding one of dog groomer." Tr. 22. The ALJ also cited to "functional reports such as that of her husband in December 2018" that "indicate significant sustained work, and do not indicate any difficulty in reliably performing work on a day to day basis." *Id.* Finally, the ALJ noted that "Dr. Clark finds [plaintiff] to have significant limitations in manipulation, but as has been noted, the record including his own chart notes do not reflect any significant persisting deficits in this area." *Id.*

An ALJ may discredit a doctor's opinion where the restrictions are inconsistent with the level of activity that the claimant is engaged in. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ explained why Dr. Clark's restrictions were inconsistent with plaintiff's work activity. Therefore, the ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount Dr. Clark's opinion.

11 – OPINION AND ORDER

Plaintiff takes issue with the ALJ's failure to "provide any specific reasons for rejecting Dr. Clark's opinion that: a) Plaintiff would need to take 3-4 unscheduled breaks during an 8 hour work day, and those unscheduled breaks would last 15 minutes in duration before returning to work, Tr. 860-861; and b) Dr. Clark's opinion that Plaintiff's symptoms are severe enough to interfere with her attention and concentration on even simple work tasks and this would cause her to be off task 20% of a typical workday. Tr. 861." Pl. Br. 7.

Indeed, the ALJ did not specifically explain why she was rejecting these portions of Dr. Clark's opinion. However, Ninth Circuit cases "do not require ALJs to perform a line-by-line exegesis . . . , nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Moreover, this court is allowed to draw specific and legitimate inferences from an ALJ's opinion. *Magallanes*, 881 F.2d at 755. While the ALJ did not parrot every portion of Dr. Clark's Treating Source Statement, the ALJ otherwise found, as discussed above, that Dr. Clark's opinion that plaintiff would have to lie down every hour was inconsistent with her work activity. The ALJ further found that although plaintiff "testified that she has problems with focus due to fatigue, . . . she has remained able to operate her own business." Tr. 21. Moreover, the ALJ concluded that "[w]ith the reduced fatigue expected with a limitation to sedentary work, she should not require specific limitations regarding memory, attention, or concentration." *Id.* It can be reasonably inferred that the ALJ rejected those aspects of Dr. Clark's opinion that she did not specifically refer to for these reasons. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that ALJs do not err if their paths "may reasonably be discerned, even if [they] explain[] [their] decision[s] with less than ideal clarity").

Next, plaintiff argues that the ALJ's rejection of Dr. Clark's opinion that she would miss four days a month of work because it was "speculative" "fails for a lack of specificity." Pl. Br. 8. But the ALJ noted that the doctor's finding was "at most based on the assumption that her work would continue to be the exertionally demanding one of dog groomer," rather than the sedentary work defined in the RFC. Tr. 22. The ALJ further rejected the doctor's opinion based on "functional reports such as that of her husband in December 2018," which "indicate significant sustained work" in a medium-exertion job for 8-10 hours, four days a week. *Id.* These were specific and legitimate reasons, supported by substantial evidence, to discount Dr. Clark's opinion. Plaintiff argues for a different interpretation of the record, but the court must "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler,* 775 F.3d at 1098.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  January 20, 2022.

/s/ Youlee Yim You<br>
Youlee Yim You<br>
United States Magistrate Judge

13 – OPINION AND ORDER